IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| RICHARD THOMAS GREGG, ) | Case No. 14-60394 |
| ) | |
| Debtor. ) | |
| _____ | |
| | |
| UNITED STATES TRUSTEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Adv. No. 13-6060 |
| ) | |
| RICHARD THOMAS GREGG, ) | |
| ) | |
| Defendant. ) | |
| _____ | |
| | |
| REGIONS BANK, N.A., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Adv. No. 13-6065 |
| ) | |
| RICHARD THOMAS GREGG, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**
**DIRECTING JUDGMENT IN FAVOR OF PLAINTIFFS AND DENYING**
**THE DEBTOR'S DISCHARGE PURSUANT TO 11 U.S.C. § 727**

The United States Trustee (the "UST") and Regions Bank, N.A., filed Complaints seeking denial of Debtor Richard Thomas Gregg's discharge pursuant to 11 U.S.C. § 727. For the reasons announced at the conclusion of the trial held

on May 7, 2014, as supplemented by those that follow, judgment will be entered in favor of the Plaintiffs, the UST and Regions Bank, N.A., on Counts Six through Sixteen of the Complaints and the Debtor's discharge will be denied pursuant to § 727 of the Bankruptcy Code.

At the outset, as the Plaintiffs point out, the Debtor did not file an Answer to the Complaints in either of the two adversary proceedings here. Because the Debtor failed to deny the factual allegations alleged in the Complaints, those facts are deemed admitted.[1] In addition, as discussed more fully in prior Orders in these proceedings,[2] the Debtor has refused to answer questions in these adversary proceedings based on an assertion of his Fifth Amendment privilege, and he did not personally appear at the trial. As a result, while the discharge cannot be denied solely based on a bankruptcy debtor's assertion of his Fifth Amendment rights, the Court may draw adverse inferences from his refusal to testify in this civil action.[3] Similarly, as the UST points out, the Fifth Amendment does not generally apply to documents prepared in the course of normal business activities,[4] unless the person

---

[1] Fed. R. Civ. P. 8(b)(6), made applicable here by Fed. R. Bankr. P. 7008(a) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied.").

[2] *See*, *e.g.*, *Order Denying Motion to Stay Action Pending Outcome of Criminal Proceedings* (Doc. No. 15 in Adv. Pro. 13-6060), and *Order Denying Motion to Stay Action Pending Outcome of Criminal Proceedings* (Doc. No. 12 in Adv. Pro. 13-6-65).

[3] *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810, 821 (1976) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment 'does not preclude the inference where the privilege is claimed by a party to a [c]ivil cause.'"); *In re Asbury*, 2011 WL 44911 (Bankr. W.D. Mo. Jan. 6. 2011) ("As bankruptcy adversary proceedings are civil proceedings, an adverse inference may be drawn against a party when they refuse to testify in response to probative evidence offered against them.") (citation omitted).

[4] *See Fisher v. United States*, 425 U.S. 391, 409-410, 96 S.Ct. 1569, 1580-81, 48 L.Ed.2d 39 (1976) ("[T]he Fifth Amendment would not be violated by the fact alone that the

2

asserting the privilege shows that the production of specific documents will be incriminating.[5] Despite having extensive business dealings, the Debtor has produced almost no records at all, and has not shown that production of any particular document requested by the Chapter 7 Trustee would incriminate him. Thus, the Court may draw adverse inferences from the Debtor's refusal to produce documents and business records requested by the Chapter 7 Trustee. Finally, although the Debtor did not refute any of the Plaintiffs' evidence with evidence of his own at trial, the Plaintiffs in fact produced substantial evidence at trial supporting the denial of the Debtor's discharge.

## GENERAL BACKGROUND

Prior to filing his bankruptcy petition, the Debtor was involved in many business activities in and around southern Missouri. Among other things, he had controlling interests in two banks and several real estate holding companies. On February 28, 2013, the Debtor was indicted by a federal grand jury in Springfield, Missouri.[6] The Indictment contains seventeen counts of alleged criminal violations arising from his banking and business dealings, including bank fraud, wire fraud,

---

papers on their face might incriminate the taxpayer, for the privilege protects a person only against being incriminated by his own compelled testimonial communications."); *United States v. Doe*, 465 U.S. 605, 610, 104 S.Ct. 1237, 1241, 79 L.Ed.2d 552 (1984) ("The Fifth Amendment protects the person asserting the privilege only from *compelled* self-incrimination. Where the preparation of business records is voluntary, no compulsion is present.") (emphasis in original). *See also Aviation Supply Corp. v. R.S. B.I. Aerospace, Inc.*, 999 F.2d 314, 317-18 (8th Cir. 1993) ("The privilege protects against compelled testimony; it does not protect the contents of preexisting or voluntarily prepared documents and records.").

[5] *See Butcher v. Bailey*, 753 F.2d 465, 470 (6th Cir. 1985) (holding that, while a debtor need not produce personal records if that production would be incriminating, "the debtor must, at least, classify documents and indicate something about why the act of production of each class of documents might be incriminating.").

[6] *United States of America v. Richard Thomas Gregg*, Case No. 13-cr-3024, filed in the United States District Court for the Western District of Missouri.

and money laundering. One of the counts in the Indictment (Count 17) alleges that the Debtor committed bankruptcy fraud and made an intentionally false statement in the bankruptcy case of 1717 Market Place LLC,[7] a company controlled by the Debtor. The criminal case is currently set for trial on July 14, 2014.

Meanwhile, shortly after being indicted, the Debtor filed this individual bankruptcy case as a Chapter 11 on March 19, 2013. The Debtor filed his Schedules and Statement of Financial Affairs on May 14, 2013, both of which were signed by the Debtor and contained declarations under penalty of perjury that the Debtor had read the documents and that they were "true and correct to the best of [his] knowledge, information, and belief."[8]

On the motion of the UST, and with the Debtor's consent, the case was converted to Chapter 7 on May 22, 2013. The Debtor has declined to answer questions asked by the Chapter 7 Trustee and creditors regarding his financial affairs at three scheduled § 341 meetings, each time asserting his Fifth Amendment privilege against self-incrimination. He has also failed to produce documents related to his and his companies' financial affairs requested in the normal course by the Chapter 7 Trustee.

The UST filed this adversary proceeding on November 21, 2013, and filed an Amended Complaint on December 27, 2013. Among the sixteen counts pled by the UST against the Debtor here, Counts One through Five allege false oaths and concealment of assets in connection with the *1717 Market Place* bankruptcy case. Counts Six through Eleven allege false statements and fraudulent transfers in this, the Debtor's individual bankruptcy case. Count Twelve alleges a fraudulent post-

---

[7] *In re 1717 Market Place LLC*, Case No. 12-61339, filed July 17, 2012, in the United States Bankruptcy Court for the Western District of Missouri. The Debtor here was the co-managing member who signed the documents initiating the filing and schedules in *1717 Market Place*. That case was dismissed on March 14, 2013.

[8] Exhibit 4.

4

petition transfer in the Debtor's individual case, and Counts Thirteen through Sixteen allege that the Debtor failed to explain a loss of assets, failed to obey a court order, withheld documents from the Chapter 7 Trustee, and failed to preserve records, all in connection with this, his individual case.

Regions Bank filed a separate adversary proceeding to deny the Debtor's discharge in this bankruptcy case. Regions Bank's Complaint contains factual allegations similar to those in the UST's Amended Complaint and the counts pled by Regions mirror those in the UST's Amended Complaint.

In each of the two adversary proceedings, the Debtor requested that these proceedings be stayed pending the outcome of the criminal case. This Court denied those requests. The Debtor appealed those Orders to the United States District Court for the Western District of Missouri, and sought a stay pending appeal, which this Court also denied. The appeals remain pending, although now appear to be moot due to this ruling on the merits.

This Court conducted a trial on May 7, 2014. Although the Debtor's attorney appeared at the trial, the Debtor did not personally appear.

At the trial, the bulk of the evidence was presented through the testimony of Fred C. Moon, the Chapter 7 Trustee in the Debtor's individual case, as well as documentary evidence and judicial notice of court files and documents.

### DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)

Section 727(a) provides, in relevant part, that the court shall grant the debtor a discharge, unless –

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –

5

> (A) property of the debtor, within one year before the date of the filing of the petition; or
>
> (B) property of the estate, after the date of the filing of the petition . . . .
>
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
>
> (4) the debtor knowingly and fraudulently, or in connection with the case –
>
>> (A) made a false oath or account;
>>
>> (B) presented or used a false claim; [or]
>>
>> * * *
>>
>> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;
>
> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraphs, any loss of assets or deficiency of assets to meet the debtor's liabilities; [or]
>
> (6) the debtor has refused, in the case –
>
>> (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify. . . .[9]

---

[9] 11 U.S.C. §§ 727(a)(2), (3), (4), (5), and (6).

The burden of proof in this action is on the Plaintiffs, who must prove each element for denial of discharge by a preponderance of the evidence.[10] "Generally speaking, denying the debtor a discharge is a 'harsh and drastic penalty.'"[11] Nevertheless, although the provisions of § 727 are strictly construed in favor of the debtor, § 727 is intended to prevent a debtor's abuse of the Bankruptcy Code.[12]

As mentioned above, Counts One through Five of the Complaints allege misrepresentations related to the 1717 Market Place case. In essence, in several instances, the information represented in the Debtor's individual bankruptcy schedules appear to contradict what was represented by the Debtor in schedules he signed and filed on behalf of 1717 Market Place, as well as tax returns and an Examiner's Report in the 1717 Market Place case. Although the Plaintiffs presented evidence on these counts, and omissions or misrepresentations made in the 1717 Market Place case could be a basis for denial of the Debtor's discharge in this case under § 727(a)(7),[13] I need not decide those counts now because, as will be discussed, there is ample evidence of grounds for denial of the discharge based on the Debtor's actions in this individual case.

## Count Six:  Failure to Disclose Income – § 727(a)(4)(A)

Section 727(a)(4)(A) provides an exception to discharge where the debtor knowingly and fraudulently, in or in connection with the case, makes a false oath

---

[10] *In re Korte*, 262 B.R. 464, 471 (B.A.P. 8th Cir. 2001).

[11] *Id.* (citation omitted).

[12] *Id*.

[13]  Section 727(a)(7) provides that discharge may be denied when "the debtor has committed any act specified in paragraph (2), (3), (4), (5), or (6) of this subsection, on or within one year before the date of the filing of the petition, or during the case, in connection with another case, under this title or under the Bankruptcy Act, concerning an insider.")

7

or account.[14]   This provision "provides a harsh penalty for the debtor who deliberately secretes information from the court, the trustee, and other parties in interest in his case."[15]  According to the Bankruptcy Appellate Panel for the Eighth Circuit:

> For such a false oath or account to bar a discharge, the false statement must be both material and made with intent.  Noting that the threshold to materiality is fairly low, this court recently articulated the standard for materiality:  The subject matter of a false oath is "material" and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.  The question of a debtor's knowledge and intent under § 727(a)(4) is a matter of fact.  Intent can be established by circumstantial evidence, and statements made with reckless indifference to the truth are regarded as intentionally false . . .
>
> As § 727(a)(4)(A) makes clear, the Code requires nothing less than a full and complete disclosure of any and all apparent interests of any kind.  The debtor's petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get to the facts.  Statements made in schedules are signed under penalties of perjury and have the force and effect of oaths, and testimony elicited at the first meeting of creditors is given under oath.[16]

In order to deny a discharge under this provision, the plaintiff must establish that: (1) debtor knowingly and fraudulently; (2) in or in connection with the case; (3) made a false oath or account; (4) regarding a material matter.[17]

---

[14] 11 U.S.C. § 727(a)(4)(A).

[15] *In re Korte*, 262 B.R. at 474 (citation omitted).

[16] *Id.* (citations and internal quotation marks omitted).

[17] *Towle v. Hendrix* (*In re Hendrix*), 352 B.R. 200, 205 (Bankr. W.D. Mo. 2006).

The Schedules in the Debtor's case indicate that the Debtor owns a 25% interest in G&S Holdings, LLC. The Trustee testified that he believed the Debtor is at least a 50% owner of that entity. In any event, G&S Holdings' 2011 tax return shows that the Debtor had withdrawals and distributions from that entity totaling $1,705,300 in 2011, which was within two years prior to filing the bankruptcy case.[18] Question 1 of the SOFA required the Debtor to:

> State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year."[19]

Question 2 of the SOFA required the Debtor to "[s]tate the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars."[20]

The income from G&S Holdings was not listed under either of these questions on the SOFA.

In addition, the Plaintiffs produced a deposit slip from CU Community Credit Union, signed by the Debtor, showing that 1717 Market Place transferred $1.2 million from its account to the Debtor's personal account on August 29, 2011.[21] Again, this income was received within the two years prior to the filing and was not disclosed on the SOFA.

---

[18] Exhibit 13.

[19] Exhibit 4 (emphasis in original).

[20] *Id.* (emphasis in original).

[21] Exhibit 23.

I find that, by failing to disclose these sources of income on his Schedules and SOFA, the Debtor knowingly and fraudulently, or with reckless indifference to the truth, made a false oath in this case regarding a material matter and that his discharge should therefore be denied pursuant to § 727(a)(4).  Judgment will be entered in favor of the Plaintiffs on Count Six of the Complaints.

### Counts Seven Through Ten:
### The Prepetition Transfers – § 727(a)(2) and (4)

In order to prevail under § 727(a)(2), the Plaintiffs must prove:  (1) that the act complained of was done within twelve months of the filing of the bankruptcy petition; (2) with intent to hinder, delay or defraud creditors; (3) that the act was done by the Debtor; and (4) that the act consisted of transferring, removing, destroying or concealing any of Debtor's property.[22]  "Proving the requisite actual intent with direct evidence is difficult."[23]  "Thus, such actual intent may be "inferred from the facts and circumstances of the debtor's conduct."[24]  However, the overriding principle applicable here and in virtually all cases under § 727(a) is that "a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor. . . ."[25]

On January 11, 2013, Plaintiff Regions Bank obtained a judgment of over $10 million against the Debtor; his wife, Jenny Gregg; J. Scott Schaefer; and Karen Schaefer.[26]  As stated, the Debtor filed this bankruptcy case on March 19, 2013.

---

[22] *In re Bateman*, 646 F.2d 1220, 1222 (8th Cir. 1981); *see also In re Grimlie*, 439 B.R. 710, 716 (B.A.P. 8th Cir. 2010).

[23] *In re Govani*, ___ B.R. ____, 2014 WL 1573041 at *5 (Bankr. N.D. Iowa Apr. 17, 2014 (*quoting Korte*, 262 B.R. at 472–73).

[24] *Id.*(*quoting Korte*, 262 B.R. at 472-73).

[25] *Id.* (*quoting In re Phillips*, 476 Fed. Appx. 813, 816 (11th Cir. 2012)).

[26] Regions Bank Exhibit R7.

On March 4, 2013, which was two weeks prior to the bankruptcy filing and while Regions Bank was pursuing collection on its judgment, the Debtor and Jenny D. Gregg (by Richard T. Gregg, her attorney-in-fact) transferred by Warranty Deed 6.39 acres of land in Christian County, Missouri, from themselves to GFT, LLC.[27] The entity GFT, LLC was created by the Debtor on February 20, 2013.[28] The Debtor is the registered agent and named organizer of GFT, LLC. The Debtor's schedules show that the Debtor owns a 25% interest in GFT, LLC. This Warranty Deed was recorded March 5, 2013.

In addition, nine months prior to filing, on June 29, 2012, and at a time when Regions Bank was pursuing the Greggs, the Debtor and Jenny D. Gregg (by Richard T. Gregg, her attorney-in-fact) transferred by General Warranty Deed, 110 acres on the James River in Christian County, Missouri, to NJRF, LLC.[29] According to the Chapter 7 Trustee, NJRF, LLC is a limited liability company formed by attorney Mark Gardner on June 15, 2012, two weeks prior to the conveyance. According to the Debtor's Schedules, the Debtor owns a 50% interest in NJRF, LLC. This Warranty Deed was recorded July 2, 2012.

Since both these transfers were made within two years prior to the bankruptcy, a trustee would be expected to review them to determine if the transfers could be set aside as fraudulent, pursuant to either the Bankruptcy Code or state law. For that reason, debtors are required in Question 10 of their Statement of Financial Affairs to identify any such transfers made during that period.[30] The

---

[27] Exhibit 15.

[28] Exhibit 16.

[29] Exhibit 18.

[30] Question Number 10 on the Statement of Financial Affairs required the Debtor to "[l]ist all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case." (Emphasis in original).

Debtor failed to disclose either of these prepetition transfers; rather, the Chapter 7 Trustee testified that he discovered the transfers only by running a search of the Christian County records.

Based on the evidence presented at trial, and nondisclosure on the SOFA, and drawing adverse inferences from the Debtor's refusal to testify, I find that the Debtor transferred these two parcels of real estate to entities in which he had an interest, within two years prior to filing the bankruptcy case, and that he did so with actual intent to hinder, delay, or defraud creditors, including Regions Bank, in making the transfers. As a result, the Plaintiffs have met their burden of proving that the Debtor's discharge should be denied under § 727(a)(2). Judgment will, therefore, be entered in favor of the Plaintiffs on Counts Eight and Ten of the Complaints.

In addition, I find that, by failing to disclose these transfers on Question 10 of his SOFA, the Debtor knowingly and fraudulently made a false oath or account in this case. The Plaintiffs have, therefore, met their burden of proving that the Debtor's discharge should be denied under § 727(a)(4). Judgment will, therefore, be entered in favor of the Plaintiffs on Counts Seven and Nine of the Complaints.

### Count Eleven:
### Failure to Disclose Interests in Entities – § 727(a)(4)

Question 18 of the SOFA required the Debtor to list information concerning "all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six** years immediately preceding the commencement of this case, or in which the

debtor owned 5 percent or more of the voting or equity securities within **six** years immediately preceding the commencement of this case."[31]

According to a Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934 admitted into evidence, the Debtor and his wife owned, as of September 6, 2011, which was within the six-year prepetition period, 9.57% of the outstanding common stock of First Bancshares, Inc., the parent company of First Home Savings Bank.[32]  According to the Trustee, this was a substantial controlling interest in the bank.  In any event, such stock ownership was not disclosed on the Debtor's schedules.  In addition, the Trustee testified that the Debtor sold 50,000 shares of the stock to Mark Gardner at some point and has not disclosed or accounted for those funds, either.

In addition, the evidence showed that the Debtor had or has interests in G-5 Property Management, Inc.,[33] GFI – Seasons Three, LLC,[34] and Food Merchants, LLC,[35] all within the six-year prepetition period.  None of these were disclosed on the schedules, and the Chapter 7 Trustee testified that, because of the Debtor's failure to respond to questions and document requests,[36] he knows very little about these entities and is unable to administer the estate with what little information he does have.

I find that, by failing to disclose his interests in these entities on his Schedules and SOFA, the Debtor knowingly and fraudulently made a false oath in this case and that his discharge should therefore be denied pursuant to § 727(a)(4).

---

[31] Exhibit 4 (emphasis in original).

[32] Exhibit 26.

[33] Exhibit 27.

[34] Exhibit 28.

[35] Exhibit 29.

[36] *See* Exhibits 24 and 25.

Judgment will be entered in favor of the Plaintiffs on Count Eleven of the Complaints.

### Count Twelve:  The Postpetition Transfers – § 727(a)(2)

In April 2013, which was postpetition, documents titled "Declaration of Special Assessment Property Taxes and Lien Imposed Pursuant to Missouri Revised Statutes, § 67.1401 to 67.1571, § 238.200 to 238.275 as Amended; and the Provisions of the Munimiss Inter-Government Agreements for Munimiss Multilateral Taxation and Cross-Collateralization Instruments (MMTCI)" were filed with the Recorders' Offices of Christian, Taney, and Greene Counties in Missouri.[37] These documents, which name the Debtor as one of the grantors, and which are signed by one Ifram Mufty-Jameel, purport to place $250 million in voluntary tax liens on multiple properties owned by the Debtor and his entities in those counties, including, according to the Chapter 7 Trustee, the Debtor's personal residence and the 1717 Market Place property.  Indeed, according to the Trustee, these "liens" encumber essentially all of the real property owned by the Debtor and his companies.

Then, sometime after May 24, 2013, Debtor's counsel sent to the Chapter 7 Trustee a "Notice, Offer, and Acceptance of Certain Acquisition by Eminent Domain Pursuant to Sections 238.200 Through 238.275 and 523.001 et seq of the Revised Missouri Statutes as Amended, and Code of Virginia Sections 56-347 and 25.1-100 et seq."[38]  This document is dated May 24, 2013, and names the Chapter 7 Trustee as a respondent.  It contains two exhibits (Exhibits B and C) which are signed by the Debtor, by Jenny Gregg ("by Richard Thomas Gregg POA"), and by

---

[37] Exhibits 20, 21, and 22.

[38] Exhibit 19.

one Abdus-Sammy Mufty-Jameel. These Exhibits are dated May 24, 2013, and titled "Written Offers for the Intended Acquisition Eminent Domain or Out of Court Settlement Thereof Pursuant to Section 523.253 RSMO Requirements." Pursuant to these documents, the Debtor and his wife "accept" written offers for all of the property owned by FRS, LLC and 1717 Market Place LLC (entities in which they have an ownership interest) for $10 million and $30 million, respectively.

Obviously, the Debtor offered no evidence as to what the purpose of these documents was, but, as the Trustee testified, their effect was to create a complex overlay of liens on all of the Debtor's assets (including his personal residence and the 1717 Market Place property), the result of which would, if not challenged, prevent the Trustee and creditors from liquidating any equity in those properties. Indeed, the document dated May 24, 2013, which was signed by the Debtor and names the Chapter 7 Trustee as a Respondent, states on its cover page: "PLEASE SEE THE ENCLOSED EMINENT DOMAIN PROCEEDINGS THAT SUPERSEDES YOUR FORECLOSURE OR RECEIVERSHIP PROCEEDINGS."[39] As the Trustee testified, the filing of these documents has clouded title on all the Debtor's real property, further hampering the Trustee's efforts to administer this estate. In addition, the Trustee testified that he had not been notified that any of this was occurring until after the "liens" were recorded and he received a copy of the May 24, 2013 "eminent domain" document.

I find, based on this evidence, that the Debtor voluntarily encumbered his and his entities' assets with these "liens" after he filed this bankruptcy case with the intent to hinder, delay, and defraud his creditors, as well as the Chapter 7 Trustee, and that his discharge should be denied under § 727(a)(2). Judgment will, therefore, be entered in favor of the Plaintiffs on Count Twelve of the Complaints.

---

[39] *Id.* (emphasis in original).

### Count Thirteen:  Failure to Explain Deficiency of Assets – § 727(a)(5)

The Debtor's schedules show assets totaling $145,030,779.00.  He shows liabilities totaling $325,512,798.95.[40]  That results in a deficiency of over $180 million.  As the UST asserts, once a party objecting to discharge under § 727(a)(5) has introduced some evidence of the disappearance of substantial assets or of unusual transactions, the debtor must satisfactorily explain what happened to the assets.[41]  Of course, the Debtor here has made no explanation whatsoever here.

As a result, I find that the Debtor's discharge should be denied pursuant to § 727(a)(5).  Judgment will, therefore, be entered in favor of the Plaintiffs on Count Thirteen.

### Count Fourteen:

### Refusal to Obey Lawful Order of the Court – § 727(a)(6)(A)

On May 22, 2013, with the Debtor's consent, this Court converted the Debtor's case from Chapter 11 to Chapter 7.[42]  That same day, the Debtor was ordered to file conversion schedules and Form B22 on or before June 3, 2013.[43]  On June 4, 2013, this Court entered an Amended Order to Show Cause why the order for relief should not be set aside, these bankruptcy proceedings dismissed and, if applicable, the discharge be denied or revoked for failure to file the

---

[40] Exhibit 4.

[41] *Chalik v. Moorefield* (*In re Chalik*), 748 F.2d 616, 619-20 (11th Cir. 1984).

[42] Exhibit 31.

[43] *Id.*

conversion schedules.[44] That Order gave the Debtor until June 18, 2013 to respond. To date, the Debtor has neither filed the conversion schedules, nor responded to the Order to Show Cause.

I assume that the Debtor might attribute his refusal to respond to these Orders to his assertion of his Fifth Amendment privilege. However, as I stated in the Order denying the Debtor's request to stay these proceedings, while the Fifth Amendment protects his right not to testify, the Fifth Amendment does not excuse a bankruptcy debtor from filing schedules in the case. And, it bears repeating that, just prior to the time the Debtor was supposed to file his conversion schedules, he had caused the "eminent domain liens" to be placed on his property.

A bankruptcy case is not like most other types of civil litigation, even the kind of civil litigation brought by a governmental agency against a party also involved in a criminal action. The Debtor himself filed this bankruptcy case and thereby invoked various protections aside from his Fifth Amendment privilege. Absent bankruptcy, and notwithstanding the pending criminal case, his creditors would have been free to obtain and execute judgments on his assets. By filing bankruptcy, the Debtor receives at least temporary relief from such actions. But, in exchange, he must disclose all assets and required transactions, so that the Trustee can insure that all available assets are liquidated for the benefit of those creditors. Here, the Debtor used the bankruptcy stay to transfer assets which creditors were stayed from reaching, while at the same time failed to disclose information the Trustee needed to capture those assets for the benefit of such creditors. "While a debtor is free to assert [his] fifth amendment privilege against self-incrimination during the bankruptcy proceedings, [he] may not turn the shield of the Fifth

---

[44] *Id.*

Case 13-06065-abf   Doc 31   Filed 05/15/14   Entered 05/15/14 14:56:14   Desc Main
                      Document      Page 18 of 20

Amendment into a sword to cut [his] way to a discharge while carrying [his] property with [him]."[45]

As a result, I find that the Debtor has refused to obey a lawful order of the court and that his discharge should be denied under § 727(a)(6)(A). Judgment will be entered in favor of the Plaintiffs on Count Fourteen of the Complaints.

### Counts Fifteen And Sixteen:
### Failure to Turn Over Books and Records – § 727(a)(4)(D) and (a)(3)

Section 727(a)(4)(D) provides for denial of discharge when the debtor knowingly and fraudulently, in or in connection with the case, "withheld from an officer of the estate entitled to possession under [the Bankruptcy Code], recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs."[46]

In July 2013, the Chapter 7 Trustee requested by two e-mails that the Debtor provide documents relating to his interests in various companies,[47] in accordance with his customary practice as a Chapter 7 Trustee. With the exception of a couple of tax returns, the Debtor has refused to produce any of the books and records requested by the Trustee. Much of what little information the Trustee has acquired came from other sources or his own research.

As a result, I find that the Debtor has knowingly and fraudulently withheld from the Trustee, as an officer of the estate entitled to possession under the

---

[45] *In re Brady*, 154 B.R. 82, 86 (Bankr. W.D. Mo. 1993) (citation omitted), *abrogated on other grounds*, *Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). *See also In re Lederman*, 140 B.R. 49, 53 (Bankr. E.D.N.Y. 1992) ("The debtor cannot use the bankruptcy court to broaden the benefits afforded to an accused by the Fifth Amendment. To do so would allow the debtor to use the Fifth Amendment as a shield, while impermissibly using the Bankruptcy Code as a sword with which to take an unfair advantage of creditors.").

[46] 11 U.S.C. § 727(a)(4)(D).

[47] Exhibit 24 and 25.

Bankruptcy Code, recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, and that his discharge should, therefore, be denied under § 727(a)(4)(D).

In addition, pursuant to § 727(a)(3), a debtor may be denied a discharge for failure to keep or preserve books from which his financial situation may be ascertained, unless the failure is justified under all the circumstances of the case.[48]

> The Court must determine whether the debtor's records were sufficient and, if not, whether the failure to maintain sufficient records was justified under all the circumstances. Intent is not an element of this ground for denial of discharge; the standard imposed is one of reasonableness. In determining the adequacy of the records maintained, the Court should consider the complexity of the debtor's business, the customary business practices for record keeping in that type of business, the degree of accuracy of existing books, and the debtor's courtroom demeanor. Discharge should not be denied if the debtor's records, though poorly organized, are reasonably sufficient to ascertain the debtor's financial condition. Once the plaintiff establishes the records are inadequate, the burden of production shifts to the debtor to demonstrate that the failure to keep adequate records was justified under all the circumstances. In order to determine if the failure was justified, the Court must first determine what records someone in like circumstances to the debtor would keep.[49]

I find that the Debtor has failed to keep or preserve books from which his financial situation may be ascertained and that such failure is not justified under all the circumstances of the case under § 727(a)(3). The Debtor is a sophisticated businessman with many business interests – he should have some books and records concerning his financial situation. And, again, the refusal to produce records is particularly troubling in light of the postpetition attempt to place the

---

[48] *Riley v. Riley (In re Riley)*, 305 B.R. 873, 882 (Bankr. W.D. Mo. 2004).

[49] *Id.* at 882-83 (citations omitted).

"eminent domain liens" on the Debtor's property, and the prepetition transfers by the Debtor to entities in which he held an interest.

Judgment will, therefore, be entered in favor of the Plaintiffs on Counts Fifteen and Sixteen of the Complaints.

## CONCLUSION

For the foregoing reasons, the Clerk of the Court is ORDERED to enter Judgment in favor of Plaintiffs, and against Debtor-Defendant Richard Thomas Gregg, on Counts Six through Sixteen of the United States Trustee's Amended Complaint and Counts Six through Sixteen of Regions Bank, N.A.'s Complaint. Debtor Richard Thomas Gregg's discharge is DENIED pursuant to 11 U.S.C. § 727(a)(2), (4), (5), and (6).

IT IS SO ORDERED.

Dated: 5/15/2014                    /s/ Arthur B. Federman
                                    Chief Bankruptcy Judge